ACCEPTED
03-14-00693-CV
4021190
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/4/2015 2:35:06 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00693-CV

**In the Third Court of Appeals**
**Austin, Texas**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/4/2015 2:35:06 PM
JEFFREY D. KYLE
Clerk

**CITY OF NEW BRAUNFELS, TEXAS, JAN KOTYLO, in her official capacity, PAT CLIFTON, in his official capacity, and FRITZ WELSCH, in his official capacity**

*Appellants,*

v.

**JOSEPH TOVAR,**

*Appellee.*

APPEAL FROM CAUSE NO. C2014-0928A
22ND JUDICIAL DISTRICT COURT OF COMAL COUNTY, TEXAS
HONORABLE DIBRELL W. WALDRIP

**APPELLANTS' REPLY BRIEF TO**
**BRIEF OF APPELLEE JOSEPH TOVAR**

Bettye Lynn
State Bar No. 11540500
Lynn, Ross & Gannaway, LLP
306 West Broadway Avenue
Fort Worth, Texas 76104
817.332.8505 (Telephone)
817.332.8548 (Facsimile)
lynn@laborcounsel.net

Valeria M. Acevedo
State Bar No. 00798020
City of New Braunfels, Texas
424 South Castell Avenue
New Braunfels, Texas 78130
830.221.4281 (Telephone)
830.626.5578 (Facsimile)
vacevedo@nbtexas.org

ATTORNEYS FOR APPELLANTS

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

INDEX OF AUTHORITIES...................................................................................... iii

ARGUMENT & AUTHORITIES ...............................................................................1

I.  THE NEW BRAUNFELS CIVIL SERVICE COMMISSION IS A NECESSARY AND
    INDISPENSABLE PARTY TO THE LAWSUIT...........................................................1

    A.  CASES RELIED UPON BY APPELLEE DO NOT HELP HIM..........................1

        1.  *Perez v. City of Laredo* ................................................................1

        2.  *City of Lubbock v. Knox*................................................................2

    B.  APPELLEE IGNORES AN IMPORTANT DECISION .......................................3

    C.  SURVEY OF PRECEDENT SUPPORTS APPELLANTS' POSITION ..................4

    D.  *PARRISH V. PHILLIPS* SUPPORTS APPELLANTS' POSITION ........................4

    E.  AN ALLEGED *ULTRA VIRES* ACT DOES NOT UNDO APPELLEE'S ERROR .5

    F.  THE COMMISSION IS A LEGAL ENTITY .....................................................6

II. APPELLEE HAS FAILED TO DEMONSTRATE HIS STANDING ...............................9

III. NO JURISDICTION EXISTS UNDER THE DECLARATORY JUDGMENTS ACT, AS
     APPELLANTS HAVE NOT WAIVED IMMUNITY FROM SUIT ...............................10

IV. APPELLEE IS NOT ENTITLED TO INJUNCTIVE RELIEF .....................................12

V.  MANDAMUS RELIEF IS AN EXTRAORDINARY REMEDY TO WHICH APPELLEE IS
    NOT ENTITLED ..............................................................................................13

VI. THE MERITS OF THIS CASE ARE NOT PROPERLY BEFORE THE COURT............14

VII. APPELLEE'S INTERPRETATION OF THE CIVIL SERVICE STATUTE IS WRONG....15

A. THE PLAIN MEANING OF SECTION 143.033(C) OF THE TLGC DOES NOT SUPPORT APPELLEE'S CLAIMS. ...........................................15

  1. "ONLY" IS THE MOST IMPORTANT ADVERB.................................18

  2. "GRADE" IS A CRITICAL NOUN....................................................18

B. LEGISLATIVE INTENT MAY BE DETERMINED BY LEGISLATIVE HISTORY .................................................................................................21

C. CASE LAW SUPPORTS DEFENDANTS' CONSTRUCTION ...........................23

D. APPELLEE'S ANALYSIS OF *KNOX* IS FLAWED .......................................25

E. THE CIVIL SERVICE ACT REQUIRES PASSING SCORES THROUGHOUT...25

F. THE LEGISLATURE KNOWS HOW TO DIFFERENTIATE BETWEEN POLICE AND FIRE IN THE CIVIL SERVICE ACT .....................................................26

G. CASES RELIED UPON BY APPELLEE ARE DISTINGUISHABLE ..................28

CONCLUSION AND PRAYER........................................................................28

CERTIFICATE OF COMPLIANCE..................................................................30

CERTIFICATE OF SERVICE .........................................................................30

# INDEX OF AUTHORITIES

*Aaron Rents, Inc., v. Travis Cent. Appraisal Dist.,* 212 S.W.3d 665 (Tex.App. – Austin, 2006, no pet.)........................................................................................23

*Bell v. City of Grand Prairie,* 160 S.W.3d 691 (Tex.App. — Dallas 2005, no pet.) ..............................................................................................................................3, 10

*Bracey v. City of Killeen,* 417 S.W.3d 94 (Tex. App. -- Austin, 2003)..................20

*City of Amarillo v. Hancock*, 239 S.W.2d 788 (Tex. 1951) .....................................9

*City of Beaumont v. Spivey,* 1 S.W.3d 385 (Tex.App.—Beaumont 1999, pet. denied) ...................................................................................................................14

*City of Harlingen v. Lucio*, 770 S.W.2d 7 (Tex.App.—Corpus Christi 1989, writ denied)........................................................................................................................4

*City of Houston v. Bates,* 406 S.W.3d 539 (Tex. 2013) .........................................16

*City of Houston v. Clark,* 197 S.W.3d 314 (Tex. 2006) .........................................23

*City of Houston v. McDonald,* 946 S.W.2d 419 (Tex.App. — Houston [14th Dist.] 1997, writ denied) ......................................................................................................4

*City of Houston v. Meister,* 882 S.W. 2d 29 (Tex.App.—Houston [14th Dist] 1994, writ denied) ...............................................................................................................13

*City of Houston v. Williams,* 353 S.W.3d 128 (Tex. 2011) ......................................8

*City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex. 1994) ...............................11

*City of Lubbock v. Knox,* 736 S.W.2d 888 (Tex.App.—Amarillo, 1987, writ ref'd)...........................................................................................................2, 13, 22, 23, 24

*City of Round Rock v. Whiteaker*, 241 S.W.3d 609 (Tex.App.—Austin 2007, pet. denied)....................................................................................................................9, 10

*Crain v. Firemen's and Policemen's Civil Service Commission of Fort Worth*, 495 S.W.2d 20 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.)...............................4

*Democracy Coalition v. City of Austin,* 141 S.W.3d 282 (Tex.App.—Austin 2004, no pet.)..............................................................................................................12

*Federal Sign v. Texas, Southern University*, 951 S.W.2d 401 (Tex. 1997) ..............5

*Firemen's and Policemen's Civil Service Commission of Fort Worth v. Williams* 531 S.W.2d 327 (Tex. 1975)........................................................................................4

*Firemen's and Policemen's Civil Service Commission of Fort Worth v. Kennedy,* 514. S.W.2d 237 (Tex. 1974)....................................................................................4

*Frey v. DeCordova Bend Estates Owners Ass'n.,* 632 S.W.2d 877 (Tex.App.—Fort Worth 1982), *aff'd.* 647 S.W.2d 246 (Tex.) ...........................................................12

*General Services Comm'n v. Little-Tex Insulation Co.,* 39 S.W.3d 591 (Tex. 2000) ......................................................................................................................22

*Hamilton v. Washington,* 2014 Tex. App. LEXIS 13733 (Tex. App. — Austin, December 23, 2014)..................................................................................................15

*Harris Cnty. Hosp Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838 (Tex. 2009).......8

*Hunt County Cmty. Supervision and Corrections Department v. Gaston,* 2014 Tex.App. LEXIS 10457 (Tex.App.—Austin, Sept. 19, 2014) ..................................15

*John Paul Mitchell Systems v. Randall's Food Markets, Inc.,* 17 S.W. 3d 721 (Tex.App.—Austin, pet. denied)..............................................................................12

*Labrado v. County of El Paso*, 132 S.W.3d 581 (Tex.App.—El Paso 2004, no pet.)..............................................................................................................................11

*Lacey v. State Banking Board,* 118 Tex. 91(1928)..................................................28

*Liberty Mut. Ins. Co. v. Adcock.* 412 S.W. 3d 492 (Tex. 2013) ..............................16

*Lowell v. City of Baytown,* 356 S.W.3d 499 (Tex. 2011) ........................................10

*Moore v. Firefighters and Police Officers Civil Service Commission of Mesquite*, 809 S.W.2d 527 (Tex.App.—Dallas, 1991, writ denied) ...........................................4

*Parrish v. Phillips,* 401 S.W.2d 347 (Tex. Civ.App.—Houston [1st Dist.] 1996, writ ref'd n.r.e.)..................................................................................................4, 5

*Perez v. City of Laredo, (Perez II)*, 82 S.W. 2d 605 (Tex.App.—San Antonio 2002, no pet.)..................................................................................................1, 2

*Perez. v. City of Laredo*, (*Perez I*), 21 S.W.3d 371 (Tex.App—San Antonio 2000) ..................................................................................................1, 2

*San Antonio Conservation Society v. City of San Antonio,* 455 S.W.2d 743 (Tex. 1970) ..................................................................................................28

*Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835 (Tex. 2007)..............................8

*TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432 (Tex. 2011) ................16

*TNRCC v. IT-Davy,* 74 S.W.3d 849 (Tex. 2002)........................................................5

*Tooke v. City of Mexia, 197* S.W.3d 325 (Tex. 2006) ..............................................8

## STATE STATUTES AND RULES

ART. 1269M§14(D)(2)................................................................................................23

§65.011(2) TEX. CIV. PRAC. & RE. CODE ANN.........................................................12

§65.011(3) TEX. CIV. PRAC. & RE. CODE ANN.........................................................12

§311.023 TEXAS GOVERNMENT CODE......................................................................16

Chapter 143 TEXAS LOCAL GOVERNMENT CODE...............................................*Passim*

§143.015(A) TEXAS LOCAL GOVERNMENT CODE ................................................7, 14

§143.023 TEXAS LOCAL GOVERNMENT CODE.........................................................26

§143.025 TEXAS LOCAL GOVERNMENT CODE......................................................26, 27

§143.025(F) TEXAS LOCAL GOVERNMENT CODE .....................................................27

§143.025(I) TEXAS LOCAL GOVERNMENT CODE .......................................................26

§143.028 TEXAS LOCAL GOVERNMENT CODE .......................................................27

§143.030 TEXAS LOCAL GOVERNMENT CODE .......................................................27

§143.031 TEXAS LOCAL GOVERNMENT CODE .......................................................27

§144.033 TEXAS LOCAL GOVERNMENT CODE .......................................................15

§143.033(C) TEXAS LOCAL GOVERNMENT CODE ........................ 15, 17-20, 22-25, 28

§143.035 TEXAS LOCAL GOVERNMENT CODE .......................................................27

§143.036 TEXAS LOCAL GOVERNMENT CODE .......................................................27

Chapter 158 TEXAS LOCAL GOVERNMENT CODE .......................................................8

§272.151-160 TEXAS LOCAL GOVERNMENT CODE ................................................10

*Policemen's and Firemen's Civil Service Act*, Act of May 26, 1985, 69th Leg., R.S., Ch. 910, §14(D)(2) and (3), 1985, *repealed by* Act of 70th Leg., R.S., Ch. 149, §1, 1981.............................................................................................................24

## OTHER AUTHORITIES

http://college.lclark.edu/live/files/10241-modifierspdf ...........................................18

http://tlchouse.granicus.com/MediaPlayer.php?view_id=23&clip_id=6394 ..........22

http://www.cws.illinois.edu/workshop/writers/misplacedmodifiers .......................18

TO THE HONORABLE THIRD COURT OF APPEALS:

Appellants, The City of New Braunfels, Texas, Jan Kotylo, in her official capacity, Pat Clifton, in his official capacity and Fritz Welsch, in his official capacity, file this Reply Brief in response to the Brief of Appellee, Joseph Tovar. Appellants respectfully show:

## ARGUMENT & AUTHORITIES

## I. THE NEW BRAUNFELS CIVIL SERVICE COMMISSION IS A NECESSARY AND INDISPENSABLE PARTY TO THE LAWSUIT.

Appellee's arguments, notwithstanding, (A.B., 18-24),[1] the New Braunfels Civil Service Commission remains an indispensable and necessary party to the litigation.

### A. CASES RELIED UPON BY APPELLEE DO NOT HELP HIM.

#### 1. *Perez v. City of Laredo*

This Court must decide whether the Civil Service Commission itself must be named as a party in order for the trial court to have jurisdiction to review and decide the issue. Appellee's citation to *Perez. v. City of Laredo*, (*Perez I*), 21 S.W.3d 371 (Tex.App—San Antonio 2000), does not advance his argument. First, the case style indicates the Plaintiff sued, *inter alia,* Joaquin Romero and Edward Sherwood, individually *and as members of the Firefighters and Police Officers Civil Service Commission of the City of Laredo.* In a subsequent appeal, *Perez v. City of Laredo,*

---

[1] References in this Reply Brief are: Appellee's Brief: "A.B." and Appellants' Brief: "C.B." References to the Texas Local Government Code shall be "T.L.G.C."

1

*(Perez II)*, 82 S.W. 2d 605, 607 (Tex.App.—San Antonio 2002, no pet.), the court describes Perez as appealing the *Commission's* decision to the district court.

Appellee apparently misunderstands Appellants' statement on page 13 of its Brief, as even *Perez II* indicated the *Commission's* decision was at issue. *Perez II, id. at 607*. None of the arguments in Appellants' Brief are negated by Appellee's erroneous interpretation of *Perez I and II.* There are still no reported cases that have squarely addressed whether suing individual Commission members only in their official (individual) capacities will  give the court jurisdiction over the *Commission as a governmental body* to act in a certain manner, such as here where the court ordered the three commissioners, named only in their official capacities, to do so.

## 2. *City of Lubbock v. Knox*

*City of Lubbock v. Knox,* 736 S.W.2d 888, 893 (Tex.App.—Amarillo 1987, writ ref'd) likewise fails to help Appellee. There, the Court of Appeals clearly stated both the City of Lubbock and its Civil Service Commission were parties to the case, and indicated it was collectively referencing them. Both had appealed a decision denying Knox's motion for summary judgment.  The court of appeals ruled in favor of both Lubbock and its Civil Service Commission. *Id.* at 893. For further analysis of the *Knox* case, *infra* at 24-25.

## B. APPELLEE IGNORES AN IMPORTANT DECISION.

A similar form of "retroactive reasoning," as advanced by Appellee, was rejected in another case brought under Chapter 143, T.L.G.C. In *Bell v. City of Grand Prairie,* 160 S.W.3d 691, 694 (Tex.App.—Dallas 2005, no pet.), police officers argued that earlier cases under Chapter 143 had waived municipalities' immunity due to their Charters' "sue and be sued" provision. However, the court rejected the argument that "courts in earlier cases under [Chapter 143] . . . must have concluded they had jurisdiction over the suits brought against municipalities because those courts reached the merits of the cases. . ." The court disagreed: ". . . not only did the [previous] opinions not suggest . . . [that immunity was waived by the 'sue and be sued' provisions] it appears the courts never considered that possibility." *Id.* at 695. Thus, *Bell* concluded the earlier cases were not holding(s) that governmental immunity did *not* bar a claim for back pay under the civil service act. *Id.*

The same result should obtain here, where neither party has located precedent directly addressing whether the court has jurisdiction to rule on an appeal of a civil service commission's decision if the commission is not named as a party. As described more fully in Appellant's Brief, the trial court had no authority to issue an order directing individual Appellants to place Appellee's name on a promotional

eligibility list, because §143.034 T.L.G.C. is clear that the *Commission* creates the promotional eligibility list, not its individual members. (C.B., 12-16). [2]

## C. SURVEY OF PRECEDENT SUPPORTS APPELLANTS' POSITION.

A survey of litigation challenging civil service commission decisions alleging violations of §143.034 reveals that in seven of the eight reported cases, the civil service commission was named as a defendant by the suing employee who objected to a ruling of the civil service commission.[3] In one case that did not name the commission as a defendant, the issue was not raised by either party. Originally, the civil service promotional provisions did not rely exclusively on written examinations and seniority points, which may explain the dearth of reported promotional examination appeals.

## D. *PARRISH V. PHILLIPS* SUPPORTS APPELLANTS' POSITION.

Appellee further mischaracterizes Appellants' legal arguments in his discussion of *Parrish v. Phillips,* 401 S.W.2d 347, 349-50 (Tex. Civ.App.—Houston

---

[2] The result that could occur, if the trial court's decision is upheld, is illustrated by a hypothetical. Should one or more members of Appellants' Civil Service Commission not be reappointed, the trial court would not have jurisdiction to order Appellee place on a promotional list, because the Commission is not named as a party. The newly-appointed commissioners would not be defendants and would not be subject to the trial court's order.

[3] *See Firemen's and Policemen's Civil Service Commission of Fort Worth v. Williams,* 531 S.W.2d 327 (Tex. 1975); *Firemen's and Policemen's Civil Service Commission of Fort Worth v. Kennedy,* 514. S.W.2d, 237 (Tex. 1974); *City of Houston v. McDonald,* 946 S.W.2d 419 (Tex.App.—Houston [14th Dist.] 1997, writ denied); *Moore v. Firefighters and Police Officers Civil Service Commission of Mesquite*, 809 S.W.2d 527 (Tex.App.—Dallas, 1991, writ denied); *City of Harlingen v. Lucio*, 770 S.W.2d 7 (Tex.App.—Corpus Christi 1989, writ denied); *Crain v. Firemen's and Policemen's Civil Service Commission of Fort Worth*, 495 S.W.2d 20 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.).

[1st Dist.] 1996, writ ref'd n.r.e.). (A.B., 20). Plaintiffs challenged the Surveying Boards' authorization to adopt rules and regulations it deemed necessary to administer a statute regulating surveyors. *Id.* at 349. The court stated:

> [i]f this Court should determine that registered professional engineers are exempted from registration under Art. 5282a, we entertain serious doubts as to whether the judgment would settle the controversy, and could be enforced, since no one charged with the duty of enforcing the Act was made a party to the suit."

*Id.* at 351.

Appellee failed to mention that Appellants' Civil Service Commission adopted a Local Rule regarding promotional test grades that he is appealing, and he is wrong in contending that *Parrish's* holding is inapplicable here. (C.R., 110).

### E. AN ALLEGED *ULTRA VIRES* ACT DOES NOT UNDO APPELLEE'S ERROR.

Appellee's claim that the *ultra vires* exception to sovereign immunity excuses his failure to name the Commission as a party, is simply wishful thinking. (A.B., 20-21). This exception applies only to instances where sovereign immunity is pled to avoid monetary damages. It does nothing to assist a plaintiff who has failed to name an indispensable and necessary party.

Neither *TNRCC v. IT-Davy,* 74 S.W.3d 849, 855 (Tex. 2002), nor *Federal Sign v. Texas, Southern University*, 951 S.W.2d 401, 404 (Tex. 1997), addressed the issue of a party's failure to name a necessary party, but rather dealt with a party's ability to seek relief under the UDJA. (A.B., 21).

5

### F.    THE COMMISSION IS A LEGAL ENTITY.

Appellee's further attempts negate the Commission as a legal entity separate from the City similarly fail. (A.B., 22).  Appellee identifies several provisions in the Civil Service Act that he claims demonstrate the Commission is not legally separate from the City. Appellants do not deny the interrelationship between the City and the Commission on the few isolated points mentioned by Appellee; however, those do not affect the independence of the Commission's operations and decision-making. Appellee fails to acknowledge the extensive number of Commission duties that are *separate* from those performed by the City Council.

The Legislature's primary purpose in enacting civil service in 1947 was to remove the political influence of elected city officials, as it gave civil service commissions exclusive authority in many areas, including:

— adopting rules governing promotions

— providing for open, competitive . . . examinations for applicants

— hearing and deciding appeals of promotional examinations

— making rules prescribing cause for removal or suspension

— holding hearings on disciplinary appeals

— determining issues of fitness for duty

— developing procedures for employee performance reports

— classifying all covered employees

6

— setting age and physical requirements for applicants for beginning and promotional positions

— adopting rules for rehiring police officers who have resigned

Chapter 143.001, *et seq,* T.L.G.C.

Notably, dissatisfaction with a commission decision permits an employee to file a petition in district court asking the *commission's* decision be set aside. §143.015(a) T.L.G.C.

The Legislature's determination to separate the Commission's activities from the City Council's supports a conclusion that the Commission must be named as a party, as it must act as a body for its orders to be valid. As it has evolved over the years, Chapter 143 has never indicated an intention to permit individual commission members to act separately. If a civil service employee obtains a court order to advance his position, then the Commission must act, if so ordered by a Court. Appellee cannot achieve the promotion he desires, because the individual Defendants cannot provide him the remedy he seeks.

Appellee erroneously alleges the Commission is not a legal entity that can "sue and be sued" (A.B., 22). A review of an index of Chapter 143 cases indicates that civil service commissions have been sued numerous times beginning shortly after the Act became effective. There are scores of cases where commissions have been defendants, despite the fact that Chapter 143 did not provide that a civil service commission can "sue and be sued."

Appellee has again confused concepts, as inclusion of the phrase "sue and be sued" has been considered by Texas courts to determine if a City has waived its *sovereign immunity* from suit. The Texas Supreme Court decided in *Tooke v. City of Mexia, 197* S.W.3d 325 (Tex. 2006), that a City Charter provision indicating a city could "sue or be sued" did not waive its sovereign immunity from suits for money damages. In the civil service context, the Court decided *City of Houston v. Williams,* 353 S.W.3d 128 (Tex. 2011), in which it considered what waiver of immunity existed after passage of Sections 271.151-160 of the T.L.G.C. *Williams* held the concept of "sue and be sued" has no place in the jurisprudence of determining whether an employee was required to name the Civil Service Commission as a party. Reliance on the "sue and be sued" waiver of sovereign immunity is a red herring.[4]

The City has already addressed the differences between Chapter 143 Civil Service and county civil service found in Chapter 158, T.L.G.C, where the Sheriff sat on the Commission and had the legal authority to put the employee back to work

---

[4] Appellee further muddies the water when he cites *Harris Cnty. Hosp Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838 (Tex. 2009) (A.B., p. 22), a case in which the Supreme Court summarized its decision in *Tooke* before moving to the other possible theories of waiver of sovereign immunity. This decision, however, does not relate to Chapter 143 civil service nor to any other theory posited by Appellee for his failure to name the Civil Service Commission as a Defendant. Appellee further confuses matters by citing, *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835 (Tex. 2007), where a contract employee sued the University for breach of his employment contract and the University asserted a sovereign immunity defense. Appellant has not asserted a breach of contract claim.

(C.B., 19-20). Here, neither Defendant City (acting through its City Council and City Manager) nor the individual Defendants have the authority to place Appellee on a promotional list.

## II. APPELLEE HAS FAILED TO DEMONSTRATE HIS STANDING.

Appellee unsuccessfully negated Appellants' arguments that he has failed to establish standing, due to his lack of a justiciable claim (A.B. 24-27). If a claim is not justiciable, declaratory relief is unavailable. No matter how wide Appellee claims the scope of declaratory judgments is, he fails to fall within it.

Appellee's attempts to distinguish *City of Amarillo v. Hancock*, 239 S.W.2d 788, 790 (Tex. 1951), by relying *City of Round Rock v. Whiteaker*, 241 S.W.3d 609, 617 (Tex.App.—Austin 2007, pet. denied), are misplaced. (*See* C.B., 23-25). Whiteaker himself observed that being on the top of a promotional eligibility list, while conferring a statutory primary right to promotion, did not create an equitable property interest in a promotion. *Id.,* at 625. Eventually, this Court rejected several of Whiteaker's arguments, including his claim that a person's position as the top candidate on a promotion eligibility list conferred a property interest. *Id.* at 625. Appellee concedes he is not basing his request for relief on an inherent right due to violations based on constitutional principles, but states that his "appeal is statutory." (A.B., 26). *Hancock's* principles, described earlier (*See* C.B., 85-86), are applicable.

Appellee scored only a 64 on the promotional examination, so unlike Whiteaker, who scored much higher than a 70 on his promotional examination, they are not similarly situated. Whiteaker passed the written examination, and had been placed on the promotional list; Appellee never met the threshold requirement of passing an examination that would place him on a promotional list, and he lacks standing. Unlike *Whiteaker,* there are no fact issues here that preclude a finding that Appellee does not have standing.

## III. NO JURISDICTION EXISTS UNDER THE DECLARATORY JUDGMENTS ACT, AS APPELLANTS HAVE NOT WAIVED IMMUNITY FROM SUIT.

Appellee wholly failed to respond to Appellants' arguments rebutting his contention that Appellants do not possess sovereign immunity from suit on various grounds. (A.B., 27-28). Rather, he cited to three cases, none of which are applicable to the facts, but did not distinguish cases cited by Appellants (C.B., 27-33). Appellee did not dispute Appellants' contention that the Civil Service Act lacks a general waiver of sovereign immunity. *Bell v. City of Grand Prairie, supra.*

Although Appellee relies on, *Lowell v. City of Baytown,* 356 S.W.3d 499 (Tex. 2011), it, too, supports *Appellants'* arguments. (A.B., 28). The Supreme Court's remand for reconsideration of the availability of back pay occurred solely due to the passage of §272.151-160 of the T.L.G.C. during the pendency of the appeal, *Id.* at 501. That section is wholly inapplicable to a challenge of a promotional eligibility list, because no contract is involved.

Appellee's reliance on *City of Round Rock, id.,* is misplaced, because the court concluded Whiteaker's suit, although styled as a mandamus, was actually a suit for money damages that implicated Round Rock's sovereign immunity. *City of Round Rock, id.* at 637. Appellee falls into neither of the two categories carved out by the court where sovereign immunity would not be implicated: failure to promote claims where (1) vacancy exists and (2) where city attempts to abolish a position. *Id.* Nor does Appellee fit into the court's third category, where another employee is promoted to a position to which a plaintiff claimed entitlement.

Appellee's reliance on *Labrado v. County of El Paso*, 132 S.W.3d 581, 592-94 (Tex.App.—El Paso 2004, no pet.), (A.B., 28), is misplaced. *Labrado* involved a lawsuit over an alleged breach of contract, not over a statutory scheme. Here, unlike *Labrado*, the Legislature has not expressly waived sovereign immunity for monetary damages sought Civil Service Act claims.

Appellee failed to respond to the City's discussion of his request for money damages in the form of actual damages and pre- and post-judgment interest and attorney's fees (A.B., 32). Even though Appellee's counsel claimed that he was not seeking money damages on the record before the trial court (R.R., 46), his Petition belies that statement (C.R., 15), as does his Response Brief (A.B., 32). Thus, the trial court erred in its conclusion relating to Appellee's requests for money damages (*See,* C.B., 31-32).

Finally, Appellee failed to address the individual Appellants' claims that they enjoy official immunity from suit (C.B., 32-33*).* Appellee did not distinguish, or even mention *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). The individual Appellants rely on *Chambers* to protect their official immunity.

## IV. APPELLEE IS NOT ENTITLED TO INJUNCTIVE RELIEF.

Appellee has failed to address any of the legal points advanced by Appellants (C.B., 38-41), as to why injunctive relief is improper. Appellee mistakenly relies on *John Paul Mitchell Systems v. Randall's Food Markets, Inc.,* 17 S.W. 3d 721,732 (Tex.App.—Austin, pet. denied, 2000), where the Court affirmed a trial court's decision that injunctive relief was *not* warranted, as the Appellant did not meet the elements for such relief. Appellee also erroneously relies on *Frey v. DeCordova Bend Estates Owners Ass'n.,* 632 S.W.2d 877, 881 (Tex.App.—Fort Worth 1982), *aff'd.* 647 S.W.2d 246 (Tex.), where injunctive relief was similarly denied, as well as *Democracy Coalition v. City of Austin,* 141 S.W.3d 282, 296 (Tex.App.—Austin 2004, no pet.). (A.B., 30). Appellee did not dispute Appellants' contention that injunctive relief is an extraordinary remedy that is not to be granted without proper proof of all the elements.

Further, Appellee failed to address his obligation to satisfy the elements of §§65.011(2) and (3) of the Tex. Civ. Prac. & Rem. Code Ann., and he failed to provide any statutory basis for his entitlement to injunctive relief per §65.001(3),

12

as earlier discussed by Appellants (C.B., 38-41). Appellee has no primary right to be promoted to any Sergeant's vacancy, as none exists.  He  failed to establish an irreparable injury, and the trial court made no findings on any of the elements of injunctive relief, including the existence of an irreparable injury. It ruled only that injunctive relief was not precluded by sovereign or governmental immunity (C.R., 268).

Appellee seems to be pleading for other employees' rights to promotion, claiming they "will suffer the same irreparable injury" if injunctive relief is not granted to him. (A.B., 31).   This argument is specious, as Appellee does not have standing to represent other employees; he sued only upon his own behalf. His wish to "protect" others is  not relevant to his plea for injunctive relief.

## V.    MANDAMUS RELIEF IS AN EXTRAORDINARY REMEDY TO WHICH APPELLEE IS NOT ENTITLED.

Appellee chose to distinguish only one of Appellants' numerous citations to decisional authority speaking directly to the situation before the Court (A.B, 29). Appellee failed to explain how he has no adequate remedy by appeal of the Commission's decision. He failed to file an appeal, just like *City of Houston v. Meister,* 882 S.W.2d 29 (Tex.App.—Houston [14th Dist] 1994, writ denied). Appellee ignores *Meister's* explanation that the use of mandamus to correct rulings by an administrative body has been narrowly restricted, *Meister, id.*  at 31. Meister failed to perfect his appeal of the Commission's order, just as Appellee failed to

appeal the Commission's decision within 10 days of its order pursuant to §143.015(a). He cannot now resurrect his opportunity to have a court consider the alleged wrong, as he failed to use the statutory appeal process provided him.[5]

## VI. THE MERITS OF THIS CASE ARE NOT PROPERLY BEFORE THE COURT.

Appellee misleads the Court when he claims that the Plea to the Jurisdiction also "decides the merits of this case," claiming Appellant concede[d] there are no genuine issues of material fact, citing to C.R. 180. (A.B., 2). This is disingenuous, as this statement is not in Appellants' Plea to the Jurisdiction; rather it was stated in Appellants' Objections and Reponses to Plaintiff's Motion for Summary Judgment (C.R. 179, *et. seq.*), The Record shows Appellee improperly attempted to have the trial court hear his Motion for Summary Judgment on the date Appellants had scheduled a hearing on their Plea to the Jurisdiction. (R.R. 4-9).

A discussion occurred between the court and the attorneys at the beginning of the hearing, as to what was before the court. (R.R., 4-9). Appellee attempted to persuade the trial court to hear his Motion for Summary Judgment; however, Appellants strenuously objected, because the matter had not been set on the docket and no fiat had issued. Appellants explained the outcome of the Plea to the

---

[5] He further failed to acknowledge the similarities presented in *City of Beaumont v. Spivey,* 1 S.W.3d 385, 388 (Tex.App.—Beaumont 1999, pet. denied), which is discussed in detail in Appellants' Brief (C.B., 33-36).

Jurisdiction could cause the case to be dismissed because without jurisdiction, the case would become moot.  (R.R., 5-9).

The court stated it would reset the hearing on the motion for summary judgment, which would involve the legal arguments and disputed facts (if any) (R.R., 8, lines 23-25).  Due to the appeal of the trial court's ruling on the Appellants' Plea to the Jurisdiction, the trial court has never considered the "merits" of the case, *i.e.,* the arguments and authorities supporting Appellants' actions in refusing to place Appellee's name on a promotional eligibility list. Therefore, Appellants contend that the "merits" are not properly before the Court on its Plea to the Jurisdiction. *See Hamilton v. Washington*, 2014 Tex.App. LEXIS 13733, *33 (Tex.App.-Austin, December 12, 2014).  However, out of an abundance of caution, Appellants respond below to Appellee's arguments regarding the "merits."

## VII.  APPELLEE'S INTERPRETATION OF THE CIVIL SERVICE STATUTE IS WRONG.

### A.  THE PLAIN MEANING OF SECTION 143.033(C) OF THE TLGC DOES NOT SUPPORT APPELLEE'S CLAIMS.

Appellants contend Appellee had to earn at least a score of 70 on his written examination before seniority points could be added; he earned a score of only 64 and the Commission did not add seniority points.  The parties differ on how to interpret Section 143.033(c) of the T.L.G.C. with regard to the score the candidate must obtain on the written promotional examination before seniority points are added. Appellee is wrong in arguing that §144.033 "clearly provides . . ." (A.B., 11-12).

15

In statutory construction, a court's "primary objective" is to "give effect to the Legislature's intent." *City of Houston v. Bates,* 406 S.W.3d 539, 543-4 (Tex. 2013). As observed by this Court in *Hunt County Cmty. Supervision and Corrections Department v. Gaston,* 2014 Tex.App. LEXIS 10457 (Tex.App.—Austin, Sept. 19, 2014):

> To discern that intent, a court must begin with the statute's words. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432 (Tex. 2011). We are to consider the statute as a whole, interpreting it to give effect to every part. "The plain meaning of the text, given the context of the statute as a whole, provides the best expression of legislative intent." *See Liberty Mut. Ins. Co. v. Adcock.* 412 S.W. 3d 492, 494 (Tex. 2013). "We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *TGS-NOPEC, supra.*

*Id.* at *14.

Thus, the lodestar of statutory interpretation is the plain language of the statute. The words that the Legislature used—*and words it omitted—*are key when interpreting §143.033.[6] Appellee has completely ignored this tenet of statutory construction.

---

[6] Other factors may also be considered: "(1) Object sought to be obtained; (2) Circumstances under which statute was enacted; (3) Legislative history; (4) . . . former statutory provisions . . . ; and (5) Consequences of a particular construction." §311.023 TEX. GOV'T. CODE.

The Court should closely compare the prior and current statutory provisions concerning the scoring of written promotional examinations[7]:

**PRIOR AND CURRENT STATUTORY PROVISIONS CONCERNING SCORING OF WRITTEN PROMOTIONAL EXAMINATIONS.**

| | |
|---|---|
| Prior to the 2005 amendment to Section 143.033(c), the 1991 Amendment read, in pertinent part, as follows: | In 2005, the Texas State Association of Fire Fighters sought to have Section 143.033(c) amended because some civil service cities were adding seniority points to test scores without requiring that the applicant had first scored a minimum passing grade of 70 on the written examination. The result of the amendment follows: |
| . . . the grade that must be placed on the eligibility list for each police officer or fire fighter shall be computed by adding the applicant's points for seniority to the applicant's grade on the written examination. | . . . the grade that must be placed on the eligibility list for each police officer or fire fighter shall be computed by adding the applicants points for seniority to the applicant's grade on the written examination, **but for a fire fighter applicant only if the applicant scores a passing grade on the written examination.** |
| Each applicant's grade on the written examination is based on a maximum grade of 100 points and is determined entirely by the correctness of the applicant's answers to the questions. . . . In a municipality [the size of New Braunfels], all applicants who receive a grade of at least 70 points shall be determined to have passed the examination. . . ." Section 143.033(c) (1991). | Each applicant's grade on the written examination is based on a maximum grade of 100 points and is determined entirely by the correctness of the applicant's answers to the questions. . . . In a municipality [the size of New Braunfels] **all police officer applicants** who receive a grade of at least 70 points shall be determined to have passed the examination and **all fire fighter applicants who receive a grade on the written examination of at least 70 points** shall be determined to have passed the examination. . . ." Section 143.033(c) (2005) |

---

[7] The bold typeface in the 2005 version represents revisions made by the Legislature to §143.033(c).

### 1. "Only" is the most important adverb.

Appellee erroneously relies on the placement of the word "only" by the 2005 Amendment in his argument that police officers do not have to attain a minimum score of 70 on the written examination before seniority points are added. (A.B., 13). Section 143.033(c) was amended in 2005 to add the following clause: ". . . but for a fire fighter applicant *only* if the applicant scores a passing grade on the written examination." Appellee mistakenly contends the adverb "only" modifies the noun "firefighter."

However, accepted rules of grammar, on which the Legislature presumably relies, provide that the adverb "only" must *precede* the phrase or clause that it modifies. [8] Here, the phrase it precedes is ". . . if the applicant scores a passing grade on the written examination." Therefore, the most grammatically correct interpretation of the entire clause is that the Legislative intent was to require a passing grade for both police officers and fire fighters on the written examination before seniority points could be added.

### 2. "Grade" is a critical noun.

Furthermore, a cursory comparison of the 1991 and 2005 versions of §143.033 reveals that for *police officers*, nothing changed. The plain language is clear that the

---

[8] *See,* http://college.lclark.edu/live/files/10241-modifierspdf, p.4 "The Plight of Poor "Only." *See also*, http://www.cws.illinois.edu/workshop/writers/misplacedmodifiers/, 1. Limiting modifiers.

police applicant's grade on the written examination is determined entirely by the person's correct answers to the written questions on the exam, and the value of that grade cannot exceed 100 points.[9] Although Appellee argues there is a meaningful distinction between the word "grade" and the phrase "grade on the written examination," he provides no reasoning to support his meritless claim. (A.B., 12-13).

Appellants contend the meaning of the word "grade" is critical to the court's analysis here, as that word signifies how well a person did on a test or other instrument determining competency. The word "grade" is used throughout §143.033(c), as shown in the chart above. Seniority points, however, have nothing to do with a person's competency on a test. Rather, they signify only tenure in the job. Therefore, the court should not give seniority points the same value as points earned through a written competency testing process. As per §143.033(c), the seniority points are added to the applicant's grade *only* if his/her name is placed on the promotional eligibility list. Only then did the Legislature intend that tenure with the department be rewarded.

Further, the use of the phrase ". . . all police officer applicants who receive a grade of at least seventy points . . ." in the fourth sentence of subsection 143.033(c)

---

[9] If the Appellee's argument were correct, an officer with a high grade on the written examination, such as 95, would end up with a grade of 105. However, the statute caps this grade at 100.

clearly relates back to the phrase "…grade on the written examination. . ." in the second sentence. This is because in all the preceding sentences, the grade on the written exam is what is being discussed. Therefore, to pass the examination, a police officer must have received a grade of at least 70 on the written examination. Only if the police officer's grade on the written examination is *at least 70* is the officer entitled to have seniority points, if any, added to his written examination grade.[10]

Appellee fails to acknowledge there was no change to the phraseology regarding Police Officers, and it remained *unchanged* from the 1991 to the 2005 version of Section 143.033(c). To give effect to Appellee's argument regarding the 2005 amendment would require the Court to completely disregard the last phrase of the fourth sentence of §143.033 that follows: ". . . shall be determined to have passed the examination." That clause remained unchanged in the 2005 Amendment and the Court should not disregard it.[11]

---

[10] Appellee's citation of *Bracey v. City of Killeen,* 417 S.W.3d 94 (Tex. App. -- Austin, 2003) supports *Defendants'* claims here with regard to the need to carefully parse the language of the statute, including the meaning and placement of words, such as the adverb "only," included in the 2005 amendment to §143.033(c).

[11] Appellants' counsel is flattered to be referenced as "persuasive authority" (A.B, 13). However, Appellee misconstrues the intent of the Texas Civil Service Reporter, which specifically disclaims providing legal advice (*See,* A.B., Appendix C, p. 2 (Disclaimer)). "Commentary" in the Civil Service Reporter is *not* legal advice. The particular commentary noted was authored by the previous publisher in 2005, when the amendment occurred. Appellants are not bound by the previous publisher's opinion, nor should it persuade this Court.

**B.** **LEGISLATIVE INTENT MAY BE DETERMINED BY LEGISLATIVE HISTORY.**

The Legislature's intent is not difficult to determine in this matter. Documents in the legislative history make it clear that the intent of the proposal introduced by the Texas State *Fire Fighter's* Association was to bring civil service *fire fighters* statewide to a consistent passing grade of 70 on the written civil service promotional examination. The House Committee Bill Analysis (substituted) attached to HB 2173, which ultimately was enacted by the Legislature, has as its "subject" "Revising firefighter civil service promotion . . . procedures." It begins by discussing the application of Chapter 143's promotional provisions as applied to civil service *firefighters* (C.R., 236). It continues, saying the "act is 'vague' in determining the person's total grade after applying the person's seniority points to the written examination grade." It then explains that "a handful of cities apply the points even if the person does not pass the examination." The House Research Organization Bill Analysis for CSHB 2173, dated May 10, 2005, states that the bill would "clarify existing laws on promotion of *firefighters* to ensure that these laws are fairly and consistently applied" (emphasis added) (C.R. 243).

Appellee wholly fails to acknowledge the stated intent (on more than one occasion) of the Legislature that the purpose of HR 2173 (S.B. 1050) was to correct

a problem of vagueness in regard to *firefighter* promotional tests and explain how to properly calculate the minimum passing grade.[12]

In the Bill Analysis, the sponsor stated that the amendment to § 143.033(c) was intended to "clarify that seniority points are awarded only if the fire fighter scores a passing grade of 70 or above on the written examination" (C.R., 236). The Bill Analysis was totally silent that any other changes were intended in how seniority points had been or were to be added to Police Officers' written examination grades.

The House Committee Report for HB 2173, in a "Comparison of Original to Substitute," stated "[t]he original version of the bill made the same changes to law in the substitute as applied to police. **The substitute removes any change to law as it applies to procedures relating to police.**" (C.R., 239). Support for this interpretation is further provided by the Conference Committee's Report Summary for S.B. 1050 stating that S.B. 1050 "clarifies that seniority points are awarded only if a firefighter or *police officer* scores a passing grade of 70 or above on the written

---

[12] Legislative history reflects that a hearing on the Bill was held by the House Urban Affairs Committee on April 12, 2005. At that hearing, Mike Higgins, Executive Director of Texas State Fire Fighters Association was the only person to speak in favor of the amendment to bring all Fire Fighters in civil service cities to the standard of receiving a passing grade of 70 in order to be accorded seniority points (C.R., 240-41). No mention was made of Police Officers, except that Mr. Higgins referred to a case (assumedly *Knox, infra*), which governed Police Officers. See Mr. Higgins' live testimony at the 2 hour 15 minute mark:
http://tlchouse.granicus.com/MediaPlayer.php?view_id=23&clip_id=6394
(The sponsor, Representative Bailey, explained the Bill at the 2 hour 13 minute mark).

examination." (C.R., 240). Appellee fails to address these reports prepared to explain the Legislature's intent.

## C.  CASE LAW SUPPORTS DEFENDANTS' CONSTRUCTION.

It is well-established in determining legislative intent, that the Legislature is presumed to be aware of case law interpreting statutes it amends or enacts. *See, General Services Comm'n v. Little-Tex Insulation Co.,* 39 S.W.3d 591, 596 (Tex. 2000); *See also, Aaron Rents, Inc., v. Travis Cent. Appraisal Dist.,* 212 S.W.3d 665 (Tex.App. – Austin, 2006, no pet.). Thus, the Texas Legislature is presumed to have been aware of the decision in *City of Lubbock v. Knox,* 736 S.W. 2d 888, (Tex.App.—Amarillo, 1987, writ ref'd).

In *Knox,* the Amarillo Court of Appeals construed the language of §143.033(c)'s predecessor, art. 1269m, §14(D)(2),[13] in a dispute over a Captain's promotional examination list in the Lubbock Police Department. At that time, §14(D) (2) was strikingly similar to the current version contained in §143.033(c):

> The grade which shall be placed on the eligibility list for each police officer applicant shall be computed by adding such police officer applicant's points for seniority to his grade on such written examination. Grades on such written examinations shall be based upon a maximum grade of one hundred (100) points and shall be determined entirely by the correctness of each applicant's answers to such questions . . . In any city having a population of 1,500,000 or less . . . all test participants receiving a grade of seventy (70) points or more or

---

[13] Article 1269m is the predecessor to Chapter 143. Chapter 143 was codified in 1987, and its codification was intended to be a non-substantive revision. *City of Houston v. Clark,* 197 S.W.3d 314, 323 (Tex. 2006).

23

the top thirty (30) percent of the test participants who receive the highest grades, whichever is greater, shall be determined to have passed an examination.[14]

*Policemen's and Firemen's Civil Service Act*, Act of May 26, 1985, 69th Leg., R.S., Ch. 910, §14(D)(2) and (3), 1985, *repealed by* Act of 70th Leg., R.S., Ch. 149, §1, 1987.

Knox made the same arguments regarding the addition of his seniority points that Appellee makes here, *i.e.*, that they should have been added to his written examination grade in order to result in him having a score more than 70 points. The court rejected Knox's arguments, and concluded that Lubbock's interpretation, ". . . upon applying the canons of construction to the statute," was ". . . the more analytically correct one." *Id.* at 891.

*Knox* reviewed the history of the civil service provisions related to promotional examinations starting in the early 1950's up to the time of its consideration of the matter. It noted that in 1979 the Legislature added a requirement for a minimum passing grade of 70 points on the written examination for police officers. The Court concluded that the only reasonable interpretation of the 1985 amendments to the section was that the Legislature's intent was to require 70 points be scored on the *written examination* in order to have a "passing" grade. Since Knox

---

[14] After this case was decided in 1987, the Legislature slightly amended Section 143.033(c), T.L.G.C. in 1989, to remove the language related to the top 30% of the test participants who receive the highest grades. Otherwise, the language in the version effective in 1987 and the 2005 version is nearly identical as related to police officers' promotions.

did not receive a grade of 70 on the written examination, he was not entitled to have his seniority points added to his grade or to be placed on the eligibility list. *Id.* at 893.

### D. APPELLEE'S ANALYSIS OF *KNOX* IS FLAWED.

There is no evidence in the language of the 2005 amendments to §143.033(c) or in the legislative history that the Legislature intended to render *Knox* prospectively void. Further, a plain reading of the 2005 version of §143.033(c) (*See,* p. 17, *supra*) reveals no intent of the Legislature to spell out "different grading requirements for police officers and firefighters," as Appellee contends.

There was a definite purpose for the 2005 amendment to §143.033(c): to specify that the standard for *Firefighters'* passing grade be the same as already in existence for Police Officers. Appellee is simply wrong that the legislative intent was to establish two different standards for Police Officers and Firefighters to pass a promotional exam. This allegation is nonsensical, as there is no indication in the legislative history that the Legislature intended to "dumb down" promotional testing for Police Officers, whose jobs are becoming increasingly sophisticated and more complex.

### E. THE CIVIL SERVICE ACT REQUIRES PASSING SCORES THROUGHOUT.

Appellee's arguments are further weakened by an examination of the treatment of Police Officers and Firefighters in other sections of the Civil Service

Act. Most notable are the hiring provisions found in §143.025. Applicants for a beginning position in a civil service Police or Fire Department must take and pass a written entrance exam with a *minimum passing grade* of 70 percent (§143.025(i)). The applicant who has a passing grade of 70 percent is eligible to receive up to five additional points for honorable military service (§143.025(f)). Police applicants and Fire applicants are held to the *same standard*. Most certainly, the Legislature did not intend that candidates for Police promotions were to enjoy a lower standard that that established for *applicants* for initial employment as a Police Officer.

**F.    THE LEGISLATURE KNOWS HOW TO DIFFERENTIATE BETWEEN POLICE AND FIRE IN THE CIVIL SERVICE ACT.**

Further, where the Legislature has intended different standards for Police Officers and Firefighters in civil service cities, it knows how to do so clearly, as demonstrated in the following chart.

| Fire Department | Police Department |
|---|---|
| **§ 143.0051 - Status of Certain Fire Department Employees** ||
| Grandfathered in 2005 | No |
| **§ 143.014 - Appointment of Assistant Chiefs** ||
| Specific Number Based on Population | Floating Number Per Formula |
| **§ 143.023 - Eligibility for Beginning Position Age** ||
| 45 Maximum | 36 |
| **§ 143.025 - Entry Level Examinations** ||
| (d) Exams for Fire Department – Different Locations | (e) Exams for Police One location |
| **§ 143.0251 –Reappointment After Resignation** ||
| **No** | **Yes** |
| **§ 143.028 – Promotional Eligibility** ||
| (a) 2 Years at Any Time | (b) 2 Years Immediately Before Examination |
| **§ 143.030 – Fire Eligibility for Promotion** ||
| 2 Years at Any Time | |
| **§ 143.031 – Police Eligibility for Promotion** ||
| | 2 Years Continuously Held |
| **§ 143.035 – Alternate Promotional System** ||
| No | Yes |
| **§ 143.036 – When Vacancy Occurs** ||
| 2005 – Legislature Addressed | Established by Court Opinion |

**G.** **CASES RELIED UPON BY APPELLEE ARE DISTINGUISHABLE.**

*San Antonio Conservation Society v. City of San Antonio,* 455 S.W.2d 743 (Tex. 1970)(A.B. 18), is not a civil service case, but rather dealt with a property statute and a 1955 law that sought to override a 1905 law, which was later encompassed by a constitutional provision. It does nothing more than state the Legislature has authority to override earlier statutes, even those that have a constitutional foundation. *Lacey v. State Banking Board,* 118 Tex. 91(1928) (A.B.18), is not helpful, as it states only the general rule that the legislature has a definite purpose in every enactment.

## CONCLUSION AND PRAYER

For the reasons stated herein, Appellants respectfully request this Court grant it the relief sought in its Brief of Appellants (C.B.,41-43). Further, should the Court address the "merits" of Appellee's claim, Appellants pray the Court find as a matter of law that *Appellants'* interpretation of §143.033(c) T.L.G.C. is correct, reverse the trial court in all respects, and grant judgment to Appellants.

Respectfully submitted,


*/s/ Bettye Lynn*
Bettye Lynn
State Bar No. 11540500
**LYNN ROSS GANNAWAY & CRANFORD, LLP**
306 West Broadway Avenue
Fort Worth, Texas 76104
Telephone:  (817) 332-8505
Facsimile:   (817) 332-8548
Lynn@laborcounsel.net

Valeria M. Acevedo
State Bar No. 00798020
**CITY OF NEW BRAUNFELS**
424 South Castell Avenue
New Braunfels, Texas 78130
Telephone:  (830) 221-4281
Facsimile:   (830) 626-5578
VAcevedo@nbtexas.org

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. R. 9.4, I hereby certify that this brief contains 6793 words. This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the documents.

/s/ Bettye Lynn
Bettye Lynn

## CERTIFICATE OF SERVICE

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d), (e), I certify that I have served this document on all other parties, which are listed below on this the 4th day of February, 2015, as follows:

*By Electronic Service or Certified Mail, Return Receipt Requested*

Chad R. Hyde
State Bar No. 24046130
Texas Municipal Police Association
6200 La Calma Drive, Suite 200
Austin, Texas 78752
512.454.8900 (Telephone)
512.454.8860 (Facsimile)

Randal C. Doubrava
State Bar No. 0602990
Texas Municipal Police Association
6200 La Calma Drive, Suite 200
Austin, Texas 78752
512.454.8900 (Telephone)
512.454.8860 (Facsimile)

/s/ Bettye Lynn
Bettye Lynn